**People of the State of Illinois, Plaintiff-Appellee, v. Isam Joseph Moore, a/k/a Isom Joseph Moore, and Henry Mallett, Defendants-Appellants.**

**Gen. No. 49,958.**

First District, Fourth Division.

July 29, 1966.

Rehearing denied September 12, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Truman Larry, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

On June 13, 1965, a jury found the defendant, Henry Mallett guilty of robbery. In a trial in the Circuit Court of Cook County the trial judge entered judgment and the defendant was sentenced to serve a term of 15 to 30 years in the Illinois State Penitentiary. The defendant appeals to this court, urging reversal on two grounds: that conviction rested on inadmissible evidence, and that the trial court improperly refused his attorney's request to recall the State's key witness for cross-examination.

From the record it appears there was evidence that on October 29, 1963, at about 5:45 p. m., at least three armed men entered the Clark Super Food Mart, 3820 West 16th Street, Chicago, and robbed it of a sum of money in excess of $1,000, some money orders, and eight store keys. This property was taken from the store's safe while the customers and employees of the store were held at gunpoint. The head cashier of the store saw only one man, whom she could not identify, and who, she testified, entered the office, ordered her to sit on the floor, then went into the safe and the money order drawer.

Van Watts, Jr., a stock clerk in the store, and the State's chief witness against the defendant, testified that the police arrived after the robbery at about 6:00 p. m., and he gave a description of the robber to three policemen; and that on the same evening at about 8:00 p. m., he talked to two detectives from the Robbery Division assigned to the case. The next night at the police station Watts first learned that the name of one of the suspected robbers was Mallett; and he testified that a relative of his called to his attention that he knew Mallet

from having gone to grammar school with him. Watts further testified that on November 16, 1963, he identified Mallett as one of the robbers; that Mallett stated he knew Watts and that Watts was from "Clark" [Clark Super Food Mart]; and that Mallett admitted he had participated in the robbery. This latter was corroborated by the testimony of one of the detectives.

The day after the robbery, at about 7:30 or 8:00 p. m., the police went to the Mallett apartment, where Mallett lived with his wife, Sandra, and arrested one Isam Moore. Mallett had left the apartment about 15 minutes before the police arrived. At the time there was no light in the apartment, due to the electricity having been turned off because of Mallett's failure to pay the electric bill. When the police arrived they arrested Moore and went through the Mallett apartment. One of the detectives, testifying on behalf of the State, said they found eight keys in a brown envelope on the headboard of the bed in the bedroom. The police inventoried these keys, and on November 16, 1963, the detective who found them went to the Clark Super Food Mart where the keys were identified as belonging to the Mart. It also appears from the record that these identical keys were taken in the robbery. At the trial they were marked State's Exhibit One, and the detective testified that they were the same keys he took from the Mallett apartment.

Mrs. Mallett testified on behalf of the defendant. Her testimony was that Moore had free access to the Mallett apartment; that he frequently stayed there overnight and slept on a pull-out bed in the front room, and that he had stayed there the night before the police arrested him. She further testified that although Moore never slept in the bedroom he "could walk into any room he wanted to." She testified that Moore had come into the Mallett apartment the evening he was arrested; that after his arrival and before the police came, Mallett had left.

At the close of the State's case the State introduced the keys into evidence over the objection of defendant. Defendant's counsel specified his objection which was that the State had failed to prove that the keys were in the exclusive possession of Henry Mallett and were therefore not admissible. In this court the defendant argues that the keys were the product of an illegal search and were therefore inadmissible. The objection to the admission of the keys was not made on that ground, and the question of illegal search appears for the first time in defendant's brief in this court. During the trial the defendant did not make a motion to suppress, nor did he even raise a question as to illegal search and seizure of the keys. The question was not raised in the defendant's post-trial motion for a new trial. In People v. Harris, 33 Ill2d 389, 211 NE2d 693, the court held that the question of an illegal search and seizure becomes important only if the evidence obtained thereby is properly objected to at the trial, and stated: "It is well settled that this court will not consider the question of illegal search and seizure, even though pursuant to an illegal arrest, where it has not been raised before the trial court." In People v. King, 26 Ill2d 586, 188 NE2d 11, the court held that since the defendant's claim of unlawful search and seizure was raised for the first time on appeal, and since the narcotics were admitted into evidence without objection, it was unnecessary to consider the legality of the search since no objection on that ground was raised upon the trial. In People v. Brengettsy, 25 Ill2d 228, 184 NE2d 849, the court cited and quoted from People v. Washington, 23 Ill2d 546, 179 NE2d 635, as follows: " 'An objection to evidence, based upon a specific ground is a waiver of objection on all grounds not specified.' " Also see People v. Sotos, 26 Ill2d 460, 187 NE2d 245; People v. Riley, 31 Ill2d 490, 202 NE2d 531; People v. Ikerd, 26 Ill2d 573, 188 NE2d 12.

■ With reference to the alleged error of the court in permitting the keys to be introduced in evidence over the defendant's objection that they were not shown to have been in his exclusive possession, People v. Wheeler, 5 Ill2d 474, 126 NE2d 228, is controlling. In that case the court said:

"Defendant contends that error was committed in admitting in evidence the bag of money found in the hotel room jointly occupied by defendant and Williamson, because defendant was not in exclusive possession of the room or the money. In advancing this argument defendant apparently has in mind the requirements of the well-settled rule that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the jury a reasonable doubt as to guilt. (People v. Bennett, 3 Ill2d 357; People v. Nixon, 414 Ill 125.) Before the rule may be invoked exclusive possession must be proved. (People v. Phelps, 388 Ill 618; People v. Powloski, 311 Ill 284.) But it is equally well settled that joint possession with another can be exclusive possession within the rule. People v. Phelps, 388 Ill 618; People v. Strutynski, 367 Ill 551; People v. Scholler, 385 Ill 93.

"Defendant admits that he had occupied the room with Williamson from the time of their arrival until they were apprehended. There is no evidence that anyone else was in the room from the time Beck saw the two go upstairs on the morning of December 14 until the room was searched. Defendant himself admits that he was in the room when Williamson entered with the money. It is probably true, as counsel for the People point out, that the rule has no

application to the facts of this case, because here we have direct rather than circumstantial evidence of the crime, in addition to the evidence of possession, and therefore the evidence of possession is admissible for whatever weight the jury might give it, even though the possession is not completely exclusive. We believe that under either view the evidence was properly admitted."

In the instant case there was direct, rather than circumstantial evidence of crime and of the identification of the defendant. This brings it squarely under the rule laid down in the Wheeler case.

The defendant also argues here that he was prejudiced when the trial court refused to permit his appointed counsel to recall a State's witness for further cross-examination.

During the cross-examination of Detective Carr as a State's witness the defense counsel requested and received police reports. The court then recessed the jury trial to permit defense counsel to study the reports. The trial was then resumed, and at the close of all the evidence the defendant offered all of the police reports [Exhibits 1, 2, 3, 4 and 5], which were received in evidence. The court ordered the police reports to be read to the jury. Defense counsel said he could not read them and withdrew the exhibits from evidence. He again offered them and they were again received in evidence. Defense counsel then agreed to let the Assistant State's Attorney read the defense exhibits to the jury. After the Assistant State's Attorney began to read defense Exhibit 1 aloud to the jury, defense counsel again withdrew the police reports from evidence. At the close of all the evidence defense counsel made a motion for a directed .verdict, which was denied. The court adjourned until the next morning.

■■■■

■■■■ When the court reconvened the following day defense counsel made a motion to reopen the case so that he could recall Watts and Detective Carr to the witness stand in order to cross-examine them with reference to the police reports. The court pointed out that the reports had been in evidence the day before, then withdrawn, and that the witnesses in the case were not now present. The defendant did not reoffer the reports. The reports do not appear in the record nor did the defendant make any offer of proof with reference to the reports. Under those circumstances there is nothing in the record to question the court's refusal to permit the trial to be reopened and that Detective Carr and Watts be recalled for further testimony concerning the police reports. The reopening of a trial for further evidence is within the sound discretion of the trial court and the discretion will not be interfered with except where a clear abuse or prejudice to the defendant is shown. People v. Franceschini, 20 Ill2d 126, 169 NE2d 244; People v. Hill, 61 Ill App2d 16, 208 NE2d 874.

■ ■ The defendant also argues that the defense counsel, by failure to cross-examine concerning the police reports, prejudiced the defendant. It is impossible for this court to say, without having the police reports before it, whether or not the defendant was prejudiced. In order to obtain a reversal on such a ground it must appear that the defendant was substantially prejudiced by the incompetency of counsel and that a different outcome would probably have resulted. People v. Kees, 32 Ill2d 299, 205 NE2d 729.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.