THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY COOK *et al.*, Defendants-Appellants.

(Nos. 59944-45 cons.;

First District (4th Division)—August 13, 1975.

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Marcia B. Orr, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. The defendants, Henry Cook and Felton Clayton, were tried and convicted by a jury for the offense of armed robbery. Defendant Cook was sentenced to a term of 25 to 75 years in the Illinois State Penitentiary. Defendant Clayton was sentenced to a term of 10 to 50 years in prison.

The issues presented on appeal are (1) whether the prosecutor's comments during closing argument as to the uncontradicted nature of the State's evidence were improper; and (2) whether the trial court erroneously relied upon defendant Cook's presentence investigation report at the hearing in aggravation and mitigation.

The defendants, Henry Cook and Felton Clayton, were indicted for armed robbery. At trial, the State called Jeffery Scales, an accomplice to the armed robbery who had been granted immunity from prosecution. Scales testified he and the two defendants went to the Canterbury Shopping Center in Markham on the evening of January 3, 1973, for the purpose of robbing the Allied Radio Shack. The robbery had been planned and organized by defendant Cook. Defendant Clayton, along with Scales, went into a Goldblatt's store located in the shopping center and bought some gloves. When the two men returned to the car, defendant Cook asked Clayton when he was going to get the gun. Cook thereupon drove to the rear of the shopping center. Clayton then got out of the car and removed the gun from under the hood.

The three men then drove to the front of the parking lot and sat and watched the Radio Shack store. At approximately 8:55 p.m., Scales got out of the car and walked over to the store located next to the Radio Shack. He was soon joined by defendant Clayton. Scales and Clayton waited until the man in the Radio Shack store came out the front door. When the man appeared, Clayton stuck the gun in the man's face and told him to go back into the store.

Once inside the store, defendant Clayton ordered the man to lie on the floor. Scales removed the man's watch, wallet and coin purse and then handcuffed and tied him. Clayton removed the money from the

cash register, threatening the man he would be killed if that wasn't all the money. Scales grabbed two tape recorders and then accompanied Clayton to the back of the store. Defendant Cook drove the car to the rear of the store where the three men loaded the stolen goods and fled.

The victim, Thomas Mandich, testified at trial that defendant Clayton threatened to kill him if he did not cooperate. Mandich further testified the lighting in the store was good and he was able to observe the two men at close range. He saw defendant Clayton take $100 from the cash register and put the money in a white bag. He also saw Scales remove some stereo equipment from the shelves.

At the police station, Mandich identified defendant Clayton and Scales. He also identified his watch, change purse and wallet. At trial, Mandich identified the gun used by defendant Clayton during the robbery.

Officer Michael Schultz of the Markham Police Department testified he was patrolling the Canterbury Shopping Center on the night of January 3, 1973. He testified he observed a late-model brown Mercury occupied by two male Negroes, parked in the shopping center lot. Officer Schultz looked in the direction in which the two men appeared to be looking, and observed a short, thin male Negro standing in front of a shoe store located next to the Allied Radio Shack. Officer Schultz then saw the man on the passenger side of the car walk up and join the other man in front of the shoe store. The two returned to the car in a short time.

All three men subsequently entered the shopping area and stood in front of the shoe store, occasionally looking into the window of the Allied Radio Shack. The driver then returned to the car and drove to the rear of the shopping center. Schultz followed the car and saw it stop in back of the Allied Radio Shack. He observed the three men loading items from the store into the car. Officer Schultz stopped the vehicle as it was leaving the shopping center and arrested the three men.

At the close of the State's evidence, the defendants presented no witnesses and did not testify on their own behalf.

During closing arguments, the prosecutor told the jury several times the State's evidence was "uncontradicted, undenied and unrepudiated." At no time did defense counsel object to these remarks.

The defendants contend the prosecutor's remarks during closing argument that the State's evidence was "uncontradicted, undenied and unrepudiated" were improper and constituted an impermissible comment upon the defendants' right to decline to testify. In support of their contention, the defendants rely primarily on the self-incrimination clause of the Federal Constitution which was held to be violated in *Griffin v. Cali-*

*fornia* (1965), 380 U.S. 609, by direct prosecutorial comment on a defendant's failure to testify. Defendants also rely on section 155—1 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, § 155—1) which provides in pertinent part:

"[A] defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

■■ The appropriate test in determining whether the prosecutor's remarks during closing argument violated defendants' right to remain silent is "whether 'the reference [was] intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify.'" (*People v. Mills* (1968), 40 Ill.2d 4, 8.) The prosecution may, however, refer to the fact that the testimony of the State's witnesses is uncontradicted, even though the defendant would be the only person who could have contradicted it. (*People v. Norman* (1963), ·28 Ill.2d 77.) Thus, the statements made by the prosecutor in the instant case were proper. (*People v. Hopkins* (1972), 52 Ill.2d 1.) He was merely commenting on the evidence the State had presented. He never made a direct, pointed reference regarding defendants' failure to testify. Nor did he make any comments which would have directed the attention of the jury to the defendants' failure to testify.

The jury found the defendants guilty of armed robbery. The trial court ordered a presentence investigation. On June 22, 1973, a hearing in aggravation and mitigation was held. The trial judge took into consideration the presentence investigation conducted by the Probation Department. Regarding defendant Cook, the court stated it was particularly aware of an evaluation of· a caseworker of the United States Bureau of Prisons. A paragraph of that report was read into the record by the court. The judge then sentenced defendant Cook to a term of 25 to 75 years in the Illinois State Penitentiary. Defendant Clayton was sentenced to a term of 10 to 50 years in prison.

Defendant Cook contends the trial court erroneously relied upon a presentence investigation report which was prejudicial and resulted in a more severe sentence than Cook would have otherwise received. Defendant Cook argues the report, written by an unidentified caseworker from the United States Bureau of Prisons, was hearsay evidence and should not have been considered by the court.

· The Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, § 1005—3—1) specifically provides that no defendant can be sentenced until a written presentence report is presented to the. trial court. The Code of

Corrections further provides the following information must be contained in the report:

"(1) [T]he defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation and personal habits." (Ill. Rev. Stat. 1973, ch. 38, § 1005—3—2(a)(1).)

The trial court is statutorily required to consider the report at the sentencing hearing. (Ill. Rev. Stat. 1973, ch. 38, § 1005—4—1(a)(2).) The presentence investigation report on defendant Cook contained the information set forth in the Code. Cook's prior convictions for grand larceny, auto larceny and burglary were included in the report. In addition, the report enumerated several other offenses in which the defendant was involved which tended to reflect on his mental state. The report contained detailed information on Cook's mental history as well as his moral character. This information was considered by the court in sentencing Cook. The defendant waived his right to be present at the hearing in aggravation and mitigation and refused to furnish his attorney or the probation officer with any information about himself which could have been used at the hearing.

■■ Cook now contends the information in the presentence report was hearsay evidence and, therefore, unreliable because the unidentified caseworker who wrote the report could not be cross-examined. It is well settled, however, that "in determining the degree of punishment to be inflicted, the court is not bound by the usual rules of evidence found in criminal prosecutions but may search anywhere within reasonable bounds for other facts which tend to aggravate or mitigate the offense, including the moral character of the defendant, his habits, social environment and motivations." (*People v. Mann* (1963), 27 Ill.2d 135, *cert. denied* (1963), 374 U.S. 855.) The Supreme Court of the United States, in *Gregg v. United States* (1969), 394 U.S. 489, held that presentence reports are not subject to formal limitations as to their content and may rest on hearsay and contain information bearing no relation whatsoever to the crime with which the defendant is charged. In *People v. Forman* (1969), 108 Ill.App.2d 482, the appellate court held hearsay information contained in the reports of probation officers may be considered by the court at a hearing in aggravation and mitigation, where, as in the instant case, the contents of the report are known to the defendant and he is given an adequate opportunity to refute any derogatory remarks contained therein.

■■ Cook maintains that because the presentence investigation report listed several offenses for which there was no evidence of conviction, the report was inadmissible into evidence. The record indicates, however, that defendant was aware of the contents of the report and made no ob-

jections at the time the court received it into evidence. The appellate court, in *People v. Daugherty* (1969), 106 Ill.App.2d 250, 253, held that when a defendant does not object to "evidence of arrests or other encounters with the law which have not resulted in convictions * * * any error in their receipt in evidence has been waived." We therefore conclude the presentence investigation report on defendant Henry Cook was properly considered by the court at the hearing in aggravation and mitigation.

■■ We believe, however, that defendant Cook's sentence of 25 to 75 years' imprisonment, and defendant Clayton's sentence of 10 to 50 years in prison, were excessive in light of the nature of the offense committed. Therefore, under the authority granted this court by Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, § 615(b)(4)), we reduce the sentence of defendant Cook to a term of 15 to 45 years, and the sentence of defendant Clayton to 10 to 30 years.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed in part and modified in part.

Affirmed in part and modified in part.

BURMAN and JOHNSON, JJ., concur.