THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARCELLARS BOYCE, Defendant-Appellant.

First District (1st Division)   No. 62708

Opinion filed August 1, 1977.

550

James J. Doherty, Public Defender, of Chicago (Jack L. Uretsky and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul Benjamin Linton, and Edward H. Phillips, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUA delivered the opinion of the court:
After a bench trial the defendant was found guilty of rape (Ill. Rev. Stat. 1971, ch. 38, par. 11—1) and two counts of armed robbery (Ill. Rev.

Stat. 1971, ch. 38, par. 18—2). He was sentenced to a term of imprisonment of from 5 to 15 years. On appeal, he contends (1) that he was not tried within the time provided by the Fourth Term Act (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)), (2) that he was denied his constitutional right of confrontation by the court's refusal to permit the use of certain photographs for impeachment, (3) that the court improperly refused to hear his offer of proof as to the potential testimony of an absent witness, (4) that the court considered a police report which was inadmissible hearsay, (5) that he was not proven guilty beyond a reasonable doubt, (6) that the court erred in refusing to enforce a subpoena for a witness at the hearing on his new trial motion and, (7) that improper and irrelevant information was considered in determining the sentence imposed.

On July 25, 1973, the defendant was indicted for aggravated kidnapping, rape, and two counts of armed robbery. After arraignment, the matter was continued on a number of occasions at the defendant's request. However, on April 16, 1974, while out on bail, the defendant answered ready and demanded trial. Several continuances were then granted on motions by the State. On September 18, 1974, the State filed a petition for an extension of time under the Fourth Term Act, pursuant to section 103—5(c) of the Criminal Code of Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(c)). After consideration of the petition, the trial court, under the impression that the statutory term would expire on September 23, 160 days from April 16, entered an order purporting to extend the term to September 30, 1974.

■■ The defendant contends that he was not tried within 160 days of his demand for trial as required by section 103—5(b) (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)), and that, under the circumstances, the court erred in granting the extension of time. We reject this contention. Section 103— 5(b) (Ill. Rev. Stat. 1973, ch. 38, par. 103—5(b)) provides that "Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date the defendant demands trial *unless delay is occasioned by the defendant * * *.*" (Emphasis added.) Where delay is occasioned by the defendant the statutory period does not continue to run, but rather is renewed and begins to run again from the date of such delay. (*People v. Hamby* (1963), 27 Ill. 2d 493, 190 N.E.2d 289, *cert. denied,* 372 U.S. 980, 10 L. Ed. 2d 145, 83 S. Ct. 1116; *People v. Wilson* (1974), 19 Ill. App. 3d 466, 311 N.E.2d 759.) In the present case, because of delay "occasioned by the defendant," the statutory term had not in fact run when his trial commenced.

After the defendant's demand for trial on April 16, 1974, the court granted the State's motions to continue the matter to May 9, and then to June 6 for trial. On the morning of June 6, however, neither the defendant nor his attorney appeared in court. The defendant's bond was forfeited,

an arrest warrant was issued, and the case was stricken with leave to reinstate. Not until after 2:30 p.m. did the defendant, accompanied by his attorney, arrive. At that time the court vacated the bond forfeiture, quashed the arrest warrant, and reinstated the case. The following discussion between the court and counsel ensued:

"Mr. Braden: We are answering ready for trial, Judge, as we have in the past. We answered ready—

Mr. Klapman [Assistant State's Attorney]: I want to object to the vacation of the bond forfeiture, then, your Honor.

The Court: I think it is very strange for a man who is not even here to say, we are ready for trial. I will set it for trial. What date do you suggest? * * *

Mr. Klapman: Early July date?

The Court: This will be your motion?

Mr. Klapman: If he is answering ready for trial at twenty-five to 3:00 in the afternoon, I will make it my motion.

The Court: Motion State, July 10th, with subpoenas, for trial."

■■ We find that this continuance, although formally granted on the State's motion, was in fact "occasioned by the defendant." In determining whether delay is occasioned by the defendant, the applicable test is whether the act of the defendant contributed to cause the delay, or created the necessity for postponement for trial. (*People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242; *People v. Mack* (1974), 17 Ill. App. 3d 352, 307 N.E.2d 646; *People v. Rice* (1969), 109 Ill. App. 2d 212, 248 N.E.2d 332.) We think it must be recognized that at a certain point tardiness on the defendant's part, while not creating an absolute necessity of postponement, renders continuance of the matter highly desirable in terms of the efficient administration of justice. The present case represents such a situation; while the defendant may have answered ready for trial, his actions had already made postponement the more practical alternative. Hence, in a very real and substantial way, the defendant "contributed to cause the delay, or created the necessity for postponement."

The defendant emphasizes quite strenuously the fact that the continuance in question was granted on the motion of the State. However, we do not find this fact to be controlling. It has been held that where an accused in any manner causes delay in trial by his own action, the statute is tolled, even if the accused did not seek a continuance. (*People v. Leonard* (1974), 18 Ill. App. 3d 527, 310 N.E.2d 15; *People v. Poteat* (1973), 12 Ill. App. 3d 1068, 299 N.E.2d 565.) We think the logic of this rule extends even to situations where, as here, a continuance is formally granted on the State's motion. In such a case the State's action in requesting a continuance amounts simply to an acquiescence in a delay

necessitated by the defendant. Such acquiescence, like the State's agreement with the defendant on a continuance, does not relieve the defendant of responsibility for the delay. Further, the defendant points out that the record fails to show whether *the State* was in fact ready to proceed to trial on June 6, 1974. This argument also is of no avail. Even assuming, *arguendo,* that the State was not in a position to proceed, the delay would nonetheless be attributable to the defendant. Where there are two reasons for delay, one due to the State, and the other due to the defense, the fact that the delay was partly attributable to the defendant is sufficient to toll the statutory term. (*People v. Partee* (1974), 17 Ill. App. 3d 166, 308 N.E.2d 18.) Moreover, in seeking a discharge, the defendant bears the burden of showing that his right to a speedy trial has been violated. This burden includes a demonstration that he caused no delay, which fact must be affirmatively established by the record. *People v. Jones* (1965), 33 Ill. 2d 357, 211 N.E.2d 261, *cert. denied,* 385 U.S. 854, 17 L. Ed. 2d 81, 87 S. Ct. 99; *People v. Beyah* (1976), 42 Ill. App. 3d 962, 356 N.E.2d 960.

Therefore, we conclude that the statutory term, having actually begun on June 6, 1974, had not expired when the defendant's trial commenced on September 30, 1974. We need not, then, consider the issue of whether or not the court properly entered its order purporting to extend the term.

At trial, Eustis Benjamin testified that on February 19, 1973, at about 9 or 10 p.m., he was shoveling coal in the furnace room of a building at 1220 South Keeler Avenue in Chicago, where he worked as a janitor. Carrie Weaver, his sister-in-law, was also present. A man with a gun, wearing a scarf over his face, entered the room and announced a robbery. The man ordered Mrs. Weaver to toss her purse toward him. She did so. As he bent to pick up the purse, the scarf he was wearing slid down, exposing his entire face. The room was well lit, and Benjamin, standing only a few feet from the gunman, saw a scratch or scar on the left side of his face. The man searched both victims, taking $50 from Benjamin. Threatening to kill the woman if Benjamin followed, he then took Mrs. Weaver out of the building.

Benjamin recognized the gunman as the defendant, Marcellars Boyce. While he did not at that time know the defendant's name, he recalled having had drinks with him in front of 1220 South Keeler on a number of occasions. He had known the defendant for about four or five months.

After a short time, Benjamin went out to look for his sister-in-law. He found her a few minutes later, walking in the street about two blocks from the scene of the robbery. Her wig was gone, her clothes were dirty, and she appeared very nervous. She told him that she had just been raped. Benjamin took her to Loretto Hospital. There he described the robber to police. Later, he accompanied the police to 1227 South Tripp, where Mrs.

Weaver said the rape had occurred. A few days later, Benjamin saw the defendant at the corner of Roosevelt and Keeler in Chicago, stopped a police car, and had the defendant arrested.

On cross-examination, Benjamin stated that the last time he had been drinking with the defendant outside 1220 South Keeler was about one week prior to the incident, and that his helper, C. Henderson, was also present on that occasion. On further questioning, Benjamin stated that Henderson had not been present on that particular occasion, but that Henderson might have been present on other such occasions. Benjamin did not know that the defendant had a twin brother until after the defendant was arrested. Since then, Benjamin had seen the two brothers together and had no difficulty in distinguishing them. On the night of the incident he told both Mrs. Weaver and the police that he had previously seen the assailant in the neighborhood and could recognize the man.

Carrie Weaver testified that on the evening in question she was shoveling coal in the basement of a building with Eustis Benjamin. A man armed with a pistol entered the room and announced a stickup. As ordered, Mrs. Weaver tossed the man her purse. As he bent to pick it up, a scarf which he had been wearing as a mask fell below his chin, exposing his face. The room was well lit. The man then frisked both victims. After stating that he would kill Mrs. Weaver if Benjamin followed, the gunman took the woman outside.

The man took Mrs. Weaver to an abandoned building across the alley. Just inside the front door of that building he raped her. He then took her upstairs to the second floor landing where he raped her again. The man's scarf was at this time down around his neck. Before leaving the building, he took Mrs. Weaver's wig.

Mrs. Weaver went outside, and soon found Benjamin. He took her to Loretto Hospital. There she described the offender to police, and later directed them to the scene of the rape. Her wig was found outside the abandoned building. The following day, she identified a photo of the assailant from a group of 8 or 10 photos shown her by Investigator John Smith of the Chicago Police Department. The defendant was the person who had robbed her and Benjamin and raped her, and whose photograph she had identified.

On cross-examination, Mrs. Weaver testified that the assailant had a scratch or scar on the left side of his face and that she included this fact in the description she gave the police. She also stated that shortly after the incident Benjamin told her that he had seen the assailant in the neighborhood on prior occasions and could recognize the man. Defense counsel then showed Mrs. Weaver a photograph, marked as Defendant's Exhibit No. 1, which she identified as one of those shown to her by investigator Smith. She stated that although it looked like the defendant, it

was not in fact a picture of him. Apparently in correct anticipation of defense counsel's next line of questioning, the prosecutor then announced his objection to the use of certain photographs, marked as Defendant's Exhibits Nos. 5, 6, 7, and 8. These photographs, of the defendant's twin brother Maurice, had been taken that very day and tendered to the prosecution just prior to the cross-examination of Mrs. Weaver. The prosecutor pointed out that although the defendant's supplemental answer to the State's motion for pretrial discovery, filed September 28, 1974, indicated that "photographs and medical reports may be used," the four photos in question were not in existence at the time that general disclosure was made, nor was the State given any specific indication that the defense intended to procure and use photographs of Maurice Boyce. Defense counsel explained that he had "had trouble contacting" Maurice. The court, however, refused to permit use of the photographs on cross-examination of Mrs. Weaver, finding that the State had been "taken by surprise." On further questioning, the witness admitted having testified at a preliminary hearing on the matter to the effect that the defendant "had the mask on" at all times during the incident. On redirect, she explained that although the mask or scarf had never completely fallen off the defendant, it had at times slid down off his face.

The defendant contends that the court erred in refusing to permit the use of the four new photographs in the cross-examination of Mrs. Weaver. He urges that this violated his right to cross-examine adverse witnesses and that reversal of his conviction is therefore warranted. We disagree. Even if we assume that the trial court's action in this respect constituted a denial of the defendant's right of cross-examination, we find that any error so committed was harmless.

■■ ■ Improper limitation of cross-examination by the defendant warrants reversal only where there has been a clear abuse of discretion and a showing of manifest prejudice to the defendant. (*People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569; *People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.3d 693, *cert. denied*, 393 U.S. 925, 21 L. Ed. 2d 261, 89 S. Ct. 257; and see *United States v. Dodge* (8th Cir. 1976), 538 F.2d 770.) Such is the case where the defendant is denied reasonable access to an appropriate area of cross-examination of a witness whose testimony is crucial to the prosecution, or upon whose credibility the prosecution must stand or fall. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct 1105; *Douglas v. Alabama* (1965), 380 U.S. 415, 13 L. Ed. 2d 943, 85 S. Ct. 1074; *People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168.) However, any error in restricting the cross-examination of a witness whose testimony serves merely to buttress the prosecution, or on whose credibility alone the prosecution does not rest, may be deemed harmless. (*People v. Banks* (1968), 103 Ill. App. 2d 180, 243 N.E.2d 669; *People v.*

*Washington* (1967), 81 Ill. App. 2d 162, 225 N.E.2d 673, *cert. denied*, 390 U.S. 991, 19 L. Ed. 2d 1298, 88 S. Ct. 1190; *United States v. Duhart* (6th Cir. 1975), 511 F.2d 7, *cert. denied*, 421 U.S. 1006, 44 L. Ed. 2d 675, 95 S. Ct. 2409; *United States v. Brown* (8th Cir. 1973), 482 F.2d 1226.) In the present case, the identification testimony of Mrs. Weaver was clearly not crucial or essential to the prosecution. Eustis Benjamin also identified the defendant, adding that he had known the defendant for four or five months prior to the incident. While Benjamin was present only at the scene of the robbery, there is nothing in the record to suggest that a man different than the robber might have had intercourse with Mrs. Weaver. Impeachment of Mrs. Weaver's identification testimony would not have cast any doubt whatsoever on her testimony that the *same man* who robbed her and Benjamin at gunpoint later raped her in a nearby abandoned building. It is well-established that the positive identification testimony of one witness is sufficient to support a conviction. (*People v. Moore* (1969), 42 Ill. 2d 73, 246 N.E.2d 299, *rev'd in part on other grounds*, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; *People v. Brinkley* (1965), 33 Ill. 2d 403, 211 N.E.2d 730.) Finally, the fact that an error of constitutional dimension may have been committed does not foreclose the application of the doctrine of harmless error. See *Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174; *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

The defendant seeks to rely on *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, for the proposition that a denial of the right to cross-examine constitutes "constitutional error of the first magnitude" which "no amount of showing of want of prejudice" can cure. (415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111, citing *Brookhart v. Janis* (1966), 384 U.S. 1, 16 L. Ed. 2d 314, 86 S. Ct. 1245, and *Smith v. Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748.) However, the defendant has simply removed this remark from its necessary context; *Davis* neither stands on its facts nor purports to stand for such a broad proposition. *Davis* concerned the cross-examination of the prosecution's sole identification witness. The trial court had refused to permit defense counsel to inquire as to the witness' current status as a juvenile probationer, in an effort to show bias or prejudice. Shortly before concluding that this action constituted reversible error, the court referred to the witness in question as one whose testimony provided a " 'crucial link in the proof * * * of petitioner's acts. *Douglas v. Alabama*, 380 U.S. at 419, 13 L. Ed. 2d 934,' " observing that "The accuracy and truthfulness of * * * [this witness'] testimony were key elements in the State's case against petitioner." (415 U.S. 308, 317, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1111.) Similarly, the cases cited as supportive of the court's conclusion stand only for the premise that undue restriction in the cross-

examination of a crucial witness must be reversible error. In *Smith v. Illinois*, the court clearly recognized that the witness concerned was crucial to the prosecution. In *Brookhart v. Janis*, the defendant was completely denied the right to cross-examine any of the witnesses against him.

Chicago Police Officer George Kaupert testified that on February 22, 1973, Benjamin stopped him at about 4200 West Roosevelt Road. Benjamin pointed out the defendant as the man who had robbed him a few days earlier, and Kaupert arrested the defendant. Testifying from the arrest report he had prepared, Kaupert stated that there had been a scratch or scar on the left side of the defendant's face.

Investigator John Smith testified that after talking with Mrs. Weaver at Loretto Hospital on the evening of February 19, 1973, he accompanied her to the scene of the alleged rape, an abandoned building at 1227 South Tripp. There he found semen on the floor. Also, Mrs. Weaver's wig was found outside the building. After the defendant was arrested, Benjamin and Mrs. Weaver each identified a photo of the defendant from a group of police photos.

Maurice Boyce, the defendant's twin brother, testified on the defendant's behalf. Maurice stated that he first met Benjamin in about October of 1972 in front of 1217 or 1220 South Keeler. On another occasion, Maurice and a friend drank with Benjamin.

On cross-examination, Maurice identified Defendant's Exhibits Nos. 5, 6, 7, and 8 as photographs of himself. As to People's Exhibit No. 6 (also Defendant's Exhibit No. 1), Maurice said that he could not tell whether it was a photo of himself, and that it might have been a photo of his brother, Marcellars.

Annie Wynn testified that after 9 p.m. on the evening in question, with the exception of one period from about 9:05 to 9:15 p.m., she was at all times in the presence of the defendant. The two spent the evening at the defendant's parents' home, together with the defendant's younger brother, Terrell.

The defendant testified that on the evening in question he remained at home with Annie Wynn and his brother, Terrell. He did not leave the house. Some months earlier he had sustained a stab wound in the abdomen. The cold weather caused this wound to give him great pain. He had met Benjamin on one occasion, when a woman had asked him to help some other men eject Benjamin from the premises at 1220 South Keeler. The defendant knew "everybody" that lived at that address.

Chicago Police Officer Michael Ward testified that he interviewed Benjamin and Mrs. Weaver on the evening of February 19, 1973, at Loretto Hospital. Ward's report did not indicate that Benjamin had mentioned seeing the assailant in the neighborhood prior to the incident.

Ward stated that even if Benjamin had mentioned this it might not have appeared in the report. The officer's report did include an indication that the offender had a scratch on the left side of his face.

The defense rested on October 9, 1974. When the matter was next heard, on October 11, defense counsel stated that on the previous afternoon he had spoken on the telephone with a man representing himself to be Charles Henderson, the helper to whom Benjamin had referred. Counsel stated that this man had agreed to accompany him to court, but had failed to do so. For this reason counsel sought to make an "offer of proof" as to the substance of his phone conversation. He explained that he had made "diligent" efforts to locate Charles Henderson and believed that he had finally done so. The court, however, refused to hear counsel's offer of proof. Further, in response to the suggestion of defense counsel, the court indicated its unwillingness to continue the matter so that efforts might be made to produce the witness.

The defendant contends that the court erred in refusing to hear his offer of proof. We disagree. It has been held that as a general rule it is error for the court to refuse to hear an offer of proof. (*People v. Camel* (1973), 10 Ill. App. 3d 1022, 295 N.E.2d 270.) The logic of this rule can perhaps best be seen in the court's language in *Maxwell v. Habel* (1900), 92 Ill. App. 510:

> "When an objection to a question is sustained and there is no statement of counsel as to what it is expected to prove by the witness, it is impossible for a reviewing court to tell whether there was error in sustaining the objection or not. It necessarily follows that it is error for the trial judge to refuse counsel an opportunity to state what he expects to prove by any particular question or series of questions." (92 Ill. App. 510, 512.)

In other words, there is error where the court's refusal to permit an offer of proof prevents a proper review of the admissibility of the evidence sought to be introduced. However, we think that the converse also follows. Where a refusal to hear an offer of proof does not inhibit review of the underlying question of admissibility, that refusal is not in itself prejudicial. In light of this, we find that the court did not err in refusing to hear the defendant's offer of proof.

■■ In order to allow the defendant to introduce further testimony, the court would have had to grant him a continuance as well as leave to reopen his case. One seeking a continuance to procure a witness must make an offer of that witness' testimony. (*People v. Blackman* (1966), 76 Ill. App. 2d 401, 222 N.E.2d 262.) The same is true where a party seeks to reopen his case. (See *People v. Moore* (1966), 74 Ill. App. 2d 24, 220 N.E.2d 105; *Gunderson v. First National Bank* (1938), 296 Ill. App. 111, 16 N.E.2d 306.) Such offers function in much the same way as an offer made

with regard to the testimony of a witness who is already on the stand. However, in deciding whether to grant a continuance or leave to reopen to hear certain evidence, the court must exercise its judgment not only as to the admissibility of the proffered evidence in conventional terms, but also as to whether the circumstances warrant continuance or reopening. In the present case the court simply determined, in light of the defendant's lack of diligence in seeking to obtain the potential witness and the substantial possibility that the man on the phone was not in fact Benjamin's helper, not to grant a continuance and leave to reopen. Since the facts relevant to a review of this determination were in no way obscured by the court's refusal to permit a more specific offer of proof, that refusal was not prejudicial.

■■ Moreover, we find no error in the court's action. All motions for continuance are addressed to the discretion of the trial court and are considered in light of the movant's own diligence. (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) This discretion will not be interfered with excepting in cases of clear abuse (*People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54, *cert. denied*, 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 559; *People v. Newbern* (1974), 18 Ill. App. 3d 532, 310 N.E.2d 42), especially after trial has begun. (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(f); *People v. Hyde* (1968), 97 Ill. App. 2d 43, 239 N.E.2d 466.) A defendant's motion for a continuance to produce a material witness will be denied where the defendant has failed to exercise diligence to insure that the witness would be available. (*People v. Tyler* (1965), 28 Ill. App. 3d 538, 328 N.E.2d 585; *People v. Hudson* (1968), 97 Ill. App. 2d 362, 240 N.E.2d 156, *cert. denied*, 394 U.S. 1005, 22 L. Ed. 2d 783, 89 S. Ct. 1603.) In the present case, Eustis Benjamin testified as to the name and address of his helper on September 30, 1974. Defense counsel contacted the man claiming to be Henderson at the address next door to that given by Benjamin. Counsel stated that the man lived at that address with his family. However, even with the help of investigators, it took 10 days to make this contact. Then, when counsel finally did locate the man, he issued no subpoena. We do not think that this conduct amounted to an exercise of diligence. Moreover, counsel failed to give any specific explanation as to the efforts made to find the witness or the difficulties encountered. He stated only that "diligent" efforts had been made. In seeking a continuance in order to obtain a witness facts should be presented showing the exercise of a diligent effort to have the witness present, rather than the mere opinion or conclusion that diligence has been exercised. (*People v. Coniglio* (1933), 353 Ill. 643, 187 N.E.2d 799; *People v. Donaldson* (1912), 255 Ill. 19, 99 N.E.2d 62.) There is also merit in the court's observation that the defendant's offer was weak in that he had no real objective basis for asserting that the man he had talked to on the phone was in fact Benjamin's helper. Finally, the

granting of leave to reopen a case for the introduction of further testimony also rests within the sound discretion of the trial court absent clear abuse. (*People v. Siciliano* (1955), 4 Ill. 2d 581, 123 N.E.2d 725, *cert. denied*, 349 U.S. 931, 99 L. Ed. 1261, 75 S. Ct. 774; *People v. Kelly* (1941), 378 Ill. 273, 38 N.E.2d 9.) Where the defendant fails to exercise due diligence to obtain the testimony of a witness, the court may properly refuse to permit reopening of the case for that testimony. *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33; *People v. Castree* (1924), 311 Ill. 392, 143 N.E. 112.

On rebuttal for the State, Investigator Smith testified to the contents of police arrest records of the defendant and his brother, Maurice. These records showed that of the two only the defendant had been arrested on August 7, 1969, the date shown on the photograph which was People's Exhibit No. 6 and Defendant's Exhibit No. 1.

■■ The defendant contends that Smith's testimony in this regard constituted prejudicial hearsay. We agree that such testimony, absent a proper foundation to bring it within the past recollection recorded exception, was improper hearsay. However, defense counsel did not object to questions by the prosecutor clearly calling for testimony as to the contents of the records, nor did he object immediately to Smith's answers. Not until some time after Smith had finished answering a number of questions regarding the records did defense counsel make his objection. Failure to make a proper and timely objection to the admission of evidence or the propounding of a question constitutes a waiver of the right to object, and cures any error. (*People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Pry* (1967), 38 Ill. 2d 261, 230 N.E.2d 825.) Further, it would appear from the record that the court placed no significant reliance on this testimony. In overruling counsel's belated objection the court remarked "Okay, it goes in for what it's worth. It doesn't mean much." Where a case is heard by the trial court without a jury it is presumed, in the absence of a showing to the contrary, that the court considered only competent and proper evidence. *People v. Pagan* (1972), 52 Ill. 2d 525, 228 N.E.2d 102.

At the conclusion of the trial the judge found the defendant guilty of rape and of two counts of armed robbery.

On December 2, 1974, defense counsel presented a new trial motion. Attached to the motion, in connection with the allegation that the defendant was not proved guilty beyond a reasonable doubt, was an eight page document purporting to be the transcript of an interview with Charles Henderson conducted by defense counsel on the afternoon of October 11, 1974. Counsel informed the court that Henderson had been subpoenaed to testify at the hearing on the motion but had failed to appear, and asked that the court enforce the subpoena by issuing a

warrant. The court refused to do so. After a hearing, the court denied all grounds of the motion.

The defendant contends that the trial court's refusal to enforce the subpoena violated his constitutional right to compulsory process to obtain favorable witnesses. (U.S. Const., amend. VI; Ill. Const. 1970, art. 1, §8.) We cannot agree. We find that there was a proper basis for the trial court to deny this ground of the defendant's motion without conducting a hearing or receiving testimony. Hence, the defendant cannot complain that he was prejudiced by the court's refusal to enforce the subpoena.

■■ ■ As a general rule, where a defendant makes a motion for a new trial which is based on facts not of record, that motion must be supported by the signed and sworn affidavits of those persons having knowledge of the relevant circumstances. (24 C.J.S. *Criminal Law* §1482 (1961).) Thus, it has been held that where the motion is made on the basis of newly discovered evidence the defendant must, in addition to an affidavit showing his lack of prior knowledge and diligence in seeking to obtain that evidence, attach a sworn affidavit of the witness or witnesses by whom he would prove those additional facts. (*People v. Weisman* (1920), 296 Ill. 156, 129 N.E. 689.) While the defendant correctly points out that his motion does not seek to rely on the proffered testimony of Henderson as "newly discovered evidence," we think that the situation, insofar as the need for affidavits in support of the motion, is not materially different. In essence, it is asserted that the testimony of a witness, whose absence at trial was result of no fault on the defendant's part, would have been sufficiently material to the issues to warrant a new trial. Other jurisdictions have explicitly held that where a new trial is sought on the ground of the unavoidable absence from the trial of a witness on behalf of the defendant, the defendant must in support of that motion attach not only an affidavit as to his diligence in attempting to procure the witness at trial, but also the sworn affidavit of that witness as to the facts to which he would testify on retrial, unless the lack of such an affidavit is sufficiently explained. (See, *e.g., Clanton v. State* (Miss. 1951), 51 So. 2d 577; *Kelly v. State* (Tex. Crim. App. 1971), 471 S.W.2d 65.) We are inclined to follow these authorities. The defendant, however, has failed to attach to his motion either of the affidavits required, nor has he given any explanation for this failure.

■■ Given this, we find that the defendant was not prejudiced by way of the court's refusal to enforce the subpoena. On a motion for a new trial, the defendant bears the burden of rebutting the presumption of correctness which attaches to a verdict. (*People v. Holtzman* (1953), 1 Ill. 2d 562, 116 N.E.2d 338.) The very allegations of the motion, however, are not evidence of the grounds raised therein. (See *People v. Brinn* (1965), 32 Ill. 2d 232, 238, 204 N.E.2d 724, 729, *cert. denied*, 382 U.S. 827, 15 L. Ed.

2d 72, 86 S. Ct. 62.) In the absence of affidavits sufficient to support a ground of the motion, that ground is on its face insufficient and may be denied without a hearing. (*People v. Gamboa* (1975), 30 Ill. App. 3d 242, 332 N.E.2d 543.) It follows that in such a case the defendant is not prejudiced by the court's refusal to compel the attendance of a witness.

At the hearing on aggravation and mitigation the court and the prosecutor read over the defendant's police arrest record. In addition to showing the defendant's prior convictions for burglary and possession of heroin, the record indicated that a charge of indecent liberties against the defendant had been nolled, that a charge of armed robbery had been dismissed for want of probable cause, and that the defendant had been found not guilty of yet another charge. After hearing evidence in mitigation, the court imposed a sentence of 5 to 15 years imprisonment.

■■■■ The defendant contends that the introduction of these prior arrests and charges which had not resulted in convictions prevented him from receiving a fair presentencing hearing. Under the circumstances, we must disagree. It is true that arrests or other encounters with the law which did not result in convictions are inadmissible at the hearing on aggravation and mitigation. (*People v. Riley* (1941), 376 Ill. 364, 33 N.E.2d 872; *People v. Jackson* (1968), 95 Ill. App. 2d 193, 238 N.E.2d 196.) However, in the present case, no objection was made at the hearing to consideration of the full arrest record. Hence, there being no indication that defense counsel was denied access to the document, any claim of error in this respect is waived. (*People v. Cook* (1975), 31 Ill. App. 3d 363, 334 N.E.2d 834.) Moreover, we must assume that the trial judge recognized any incompetent evidence at the hearing and disregarded it. (*People v. Fuca* (1969), 43 Ill. 2d 182, 251 N.E.2d 239.) The introduction of improper evidence at the hearing does not warrant relief absent an affirmative indication on the record that the sentence was affected by such evidence. (*People v. Glover* (1975), 27 Ill. App. 3d 827, 327 N.E.2d 310; *People v. Flynn* (1974), 23 Ill. App. 3d 730, 320 N.E.2d 138.) Here there was no such affirmative indication. Also, the prosecutor twice reminded the court that insofar as the defendant's criminal record was concerned the only relevant information was that regarding prior convictions. Finally, we think that the sentence imposed—5 to 15 years—in view of the seriousness of the crimes committed—armed robbery and rape—and the defendant's prior felony convictions, was sufficiently lenient to refute any claim that the court was influenced by improper considerations. See *People v. Pavone* (1975), 31 Ill. App. 3d 1013, 335 N.E.2d 45.

Lastly, the defendant contends that he was not proven guilty beyond a reasonable doubt. In this connection he raises several specific arguments. We have considered these arguments carefully and we conclude that the evidence as a whole was not so unsatisfactory as to raise a reasonable

doubt of the defendant's guilt. *People v. Camel* (1974), 59 Ill. 2d 422, 322 N.E.2d 36; *People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.