THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNIE WALTON, Defendant-Appellant.

First District (6th Division)   No. 1—89—3181

Opinion filed December 4, 1992.

50

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendant Johnnie Walton was tried before the bench and found guilty of possession with the intent to deliver and delivery of a controlled substance pursuant to section 401(a)(10) of the Illinois Controlled Substance Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(10)). He was then sentenced to life imprisonment under the Habitual Criminal Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1). Defendant now appeals, raising the following issues: (1) whether the trial court erred in not making any inquiry into defendant's complaints regarding evidence defense counsel failed to present at the trial; (2) whether the State's failure to file a verified petition prior to the sentencing of defendant as an habitual criminal rendered the proceedings null and void; (3) whether the State failed to prove beyond a reasonable doubt that defendant was an habitual criminal where it offered no evidence at the sentencing hearing to establish that defendant's second conviction was for an offense occurring after conviction for the first offense; (4) whether this case should be remanded to determine whether defendant waived any constitutional rights in contemplation of accepting a plea agreement and whether he was "punished" for exercising his right to stand trial; and (5) whether the Act is unconstitutional because it violates provisions of the Illinois and United States Constitutions. We affirm.

At defendant's trial, Alfred Pappalito, a Chicago police officer, testified that in May 1987, he had been operating undercover when an informant or "cooperative individual" named Mark identified a man sitting in a car as the defendant. Pappalito stated that he approached the vehicle and purchased some marijuana cigarettes laced with phenocyclidine (PCP) from defendant. At that time defendant gave Pappalito a "beeper number" to call in the event that Pappalito wanted to contact him regarding additional purchases. Pappalito subsequently made four more purchases of PCP. However, it was the events of June 18, 1987, which were the basis for defendant's current conviction.

Pursuant to a prior arrangement, Officer Pappalito met defendant in a parking lot at 3536 West Division Street in Chicago at around 1:10 p.m. on June 18, 1987. Defendant asked Pappalito if he

had the money, and when Pappalito replied in the affirmative, defendant went to the southern part of the parking lot, retrieved something, and returned to Pappalito's vehicle. Defendant dropped a glass bottle through the window of the vehicle which, upon inspection by Pappalito, contained a yellow-colored liquid with the odor of PCP. Immediately after this delivery, Pappalito got out of his vehicle, which was a prearranged signal to the surveillance team. Defendant was then apprehended and arrested. One of the officers also recovered a second glass bottle with a yellow-colored liquid in the same area of the parking lot where defendant had gone before he delivered the first bottle to Pappalito.

The two bottles were delivered to the crime lab for analysis of their contents. The first bottle was found to contain 195 grams of PCP and the second bottle contained 189 grams of PCP.

In support of the affirmative defense of entrapment, defendant testified that he met Mark, the informant, in March 1987, and on that occasion he helped Mark obtain some PCP-laced marijuana or "happy sticks" which they smoked together. Sometime around April or May Mark introduced defendant to Pappalito and told him that Pappalito had lots of money to buy PCP. Although defendant testified that he did not know where to obtain PCP, he admitted that after Pappalito contacted him several times, he agreed to be the courier for certain PCP transactions between Pappalito and a "supplier" he referred to as Lee Pass' son.

In rebuttal, the State entered into the record certified copies of defendant's 1977 convictions for armed robbery and unlawful use of a weapon. Following closing argument, the court found defendant guilty as charged.

Prior to sentencing, the State filed a petition to have defendant sentenced as an habitual criminal. In support of its petition, the State presented two witnesses who testified that defendant was the person who had been convicted of attempted murder in 1970 and armed robbery in 1977. The trial court found that defendant was eligible to be sentenced as an habitual criminal.

On appeal, defendant first contends that it was error for the trial court not to inquire into defendant's complaints regarding evidence defense counsel failed to present at trial. In making a determination as to whether a defendant has received effective assistance of counsel, the Illinois Supreme Court has adopted the two-part test set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under *Strickland*, a defendant must show that counsel's representation fell below an ob-

jective standard of reasonableness such that the trial results were unreliable and that but for the attorney's unprofessional errors, the results of the trial would have been different. (*People v. Albanese* (1988), 125 Ill. 2d 100, 106, 531 N.E.2d 17.) Furthermore, without deciding whether the error was serious enough to constitute less than reasonable representation, a court can move to the second part of the two-prong test to determine if defendant has shown that he was prejudiced by the claimed errors and that, but for these errors, there is a probability that the results of the proceeding would have been different. *People v. Caballero* (1989), 126 Ill. 2d 248, 260, 533 N.E.2d 1089.

Although he did not claim that he had received ineffective assistance of counsel, he did complain that pertinent evidence had not been presented to the court. Specifically, defendant stated that his mental health history should have been made an issue and that certain photographs of the crime scene should have been entered into evidence. Defendant claims that these photographs showed the presence of other people such as Lee Pass' son at the scene of the delivery and also depicted defendant wearing a beeper which was contrary to Pappalito's testimony. Finally, defendant complains that Mark should have been called as a witness to bolster defendant's entrapment defense.

Assuming, *arguendo*, that counsel's performance was deficient, defendant was required to show that the evidence not presented was probative of his guilt or innocence. Thus if the defense counsel's alleged omissions would not have affected the outcome of this case, defendant could not have been prejudiced. *Caballero*, 126 Ill. 2d at 260.

In this case, defendant first claims that the issue of his mental health should have been considered by the court. The record indicates that defendant was examined by three psychiatrists prior to trial and found fit to stand trial by two of them. In addition, the pretrial and presentence investigation reports included information regarding defendant's prior mental health history. Therefore, the court was apprised of defendant's condition.

Defendant next claims that trial counsel failed to introduce pictures showing defendant wearing a beeper at the time of his arrest, which would have impeached the testimony of Pappalito that defendant did not have a beeper when he was arrested. However, any impeachment of the officer's testimony on this collateral issue would have little impact on the outcome of the case where defendant corroborated the critical testimony of Pappalito. Defendant ac-

knowledged that he was introduced to Pappalito by Mark, that he delivered PCP to Pappalito on four occasions, including the day of arrest and that he received money and additional PCP as part of these transactions.

Defendant's final allegation is that Mark should have been called as a witness to bolster defendant's entrapment defense. However, defendant testified that on several occasions he sold PCP to Pappalito in exchange for money at prearranged times and locations which were negotiated by Pappalito and defendant outside the presence of Mark. Thus, counsel's failure to call Mark as a witness did not result in any prejudice to defendant.

Defendant cites *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466, for the proposition that, where a defendant makes post-trial allegations that he received ineffective assistance of counsel at trial, the court should appoint new counsel to undertake an independent evaluation of defendant's claim or, at a minimum, question defendant's counsel regarding the factual matters underlying defendant's complaints. (*Jackson*, 131 Ill. App. 3d at 139.) Because the trial court in this case only listened to defendant's complaints but took no further action, defendant claims that the trial court failed to determine the merits of his allegations.

However, the trial court has no duty to interrogate counsel regarding a defendant's allegations of ineffective representation where the court could assess a defendant's claim from its observations during trial. See *People v. Miles* (1988), 176 Ill. App. 3d 758, 773, 531 N.E.2d 891.

In the present case, the trial court was aware of defendant's mental health history as documented in the pretrial and presentence investigation report, and of the probative significance of the beeper defendant was wearing as well as the presence of others at the crime scene. The trial court was also aware of the significance of Mark's testimony compared to that of Pappalito and defendant himself that he was an active participant in the sale of PCP to Pappalito. Because none of the evidence alluded to by defendant could have altered the outcome of his trial, it was not error for the trial court to have rejected defendant's complaints without further investigation.

Defendant next contends that the State's failure to file a verified petition regarding its request to have defendant sentenced under the Act renders the sentencing proceeding null and void. Following defendant's conviction, the State filed an unverified petition requesting that defendant be sentenced as an habitual criminal pur-

suant to section 33B—1(a) of the Criminal Code of 1961, which provides:

> "Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal." (Ill. Rev. Stat. 1989, ch. 38, par. 33B—1(a).)

Section 33B—2(a) of the Act defines the procedure to be followed when petitioning the court under the Act. It states in relevant part:

> "After a plea or verdict or finding of guilty and before sentence is imposed, the prosecutor *may file with the court a verified written statement* signed by the State's Attorney concerning any former conviction of an offense set forth in Section 33B—1 rendered against the defendant. The court shall then cause the defendant to be brought before it; shall inform him of the allegations of the statement so filed, and of his right to a hearing before the court on the issue of such former conviction and of his right to counsel at such hearing; and unless the defendant admits such conviction, the court shall hear and determine such issue, and shall make a written finding thereon." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, par. 33B—2(a).

Defendant contends that the State's failure to file a verified petition renders the subsequent proceeding and life sentence null and void. In support of his position, defendant cites *People v. Davis* (1990), 205 Ill. App. 3d 865, 870-71, 563 N.E.2d 869. This court in *Davis* addressed the effect of the State's unverified petition on the sentencing proceeding in the context of its ruling on defendant's double jeopardy claim. At the sentencing hearing, defense counsel argued that the State had failed to file a verified petition as required under the Act. The trial judge subsequently struck the sentencing proceeding and allowed the State to file a properly verified petition. On appeal to this court defendant claimed that striking the first hearing and allowing the State to start over with a properly verified petition constituted a double jeopardy violation. This court held:

> "There is no substantial difference between the defective indictment in *Somerville* [*Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066] and the defective peti-

tion in this case. *** There was no overreaching by the prosecutor, and the judge recognized that proceeding further under a defective petition would be futile in that any finding against the defendant might be reversed on appeal. Under the circumstances, the judge exercised sound discretion; and defendant's constitutional protection against double jeopardy was not violated." (*Davis*, 205 Ill. App. 3d at 871.) It is this language which defendant cites in support of his claim that the sentencing hearing was null and void, and that this cause should be remanded for resentencing.

■ The State relies on *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088, 450 N.E.2d 1323, for the proposition that the use of the term "may" in section 33B—2(a) of the Act indicates that the reference to a written statement by the State's Attorney as being "verified" is directory rather than mandatory because it can be read as prescribing one of the ways the prosecutor brings to the court's attention a defendant's prior convictions. (*Withers*, 115 Ill. App. 3d at 1088. See also *People v. Tobias* (1984), 125 Ill. App. 3d 234, 240, 465 N.E.2d 608.) The courts in *Withers* and *Tobias* address this section in their discussions of the constitutionality of the Act and whether it violates article VI, section 1, of the Illinois Constitution and as well as the eighth and fourteenth amendments of the United States Constitution. The State argues that based on the reasoning in *Withers*, its failure to verify its petition was not fatal to the sentencing hearing. However, we disagree. Even if the interpretation of the Act set forth in *Withers* and *Tobias* is adopted, where a petition is filed by the State requesting that defendant be sentenced as an habitual criminal, the Act requires that the petition be verified. Therefore, contrary to the State's argument, we conclude that the requirement of verification is mandatory rather than directory. However, we also note that, unlike the *Davis* case, the defendant in this case did not object to the defective petition at the hearing, and he is raising this issue for the first time on appeal. We further note that defendant was not prejudiced by the State's failure to verify its petition where a written copy of the petition signed by the assistant State's Attorney was submitted to defendant which gave him notice of the State's intent to request that defendant be sentenced under the Act. He was also given an opportunity to cross-examine the witnesses and challenge the evidence of his prior convictions which he did not do. Therefore, although we conclude that the State's petition should have been verified, we see no reason to remand this cause for further proceedings, where the State

complied with the other provisions of the statute and defendant's substantial rights were not jeopardized.

■■ The next issue raised by defendant is that the State did not prove beyond a reasonable doubt that he was an habitual criminal because the State presented no evidence at the sentencing hearing to establish the dates when the underlying offenses in the two prior convictions were committed. The Act applies only if the following requirements are met: (1) the third offense was committed after the effective date of the Act; (2) the third offense was committed within 20 years of the date judgment was entered on the first conviction; (3) the third offense was committed after conviction on the second offense; and (4) the second offense was committed after conviction on the first offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 33B—1(d)(1), (d)(2), (d)(3), (d)(4).) The date that an offense was committed may be established by circumstantial evidence such as a certified copy of the conviction and the presentence investigation report. *People v. Williams* (1990), 201 Ill. App. 3d 434, 438, 559 N.E.2d 96, *aff'd* (1992), 149 Ill. 2d 467, 599 N.E.2d 913.

At the sentencing hearing, the State established the date of defendant's first conviction through a certified copy which stated that judgment was entered against defendant for armed robbery and attempted murder on May 18, 1971. A certified copy of defendant's second conviction for armed robbery was also admitted which established that he was indicted for this offense on October 19, 1977, and sentenced on April 28, 1980. Also admitted into evidence was the presentence investigation report which contained defendant's criminal history. In addition, although the State was not required to prove the date that the first offense was committed, the record contains a copy of the indictment issued against defendant for attempted murder committed on September 2, 1970.

The record also contains evidence that the third felony offense was committed after conviction on the second offense. The indictment for the delivery of a controlled substance gives the date of the commission of this offense as on or around June 18, 1987. This date was well beyond April 28, 1980, which was the conviction date for the second offense. There was also testimony at defendant's trial establishing June 18, 1987, as the date of the third offense.

The fourth requirement of the Act is that the second felony be committed after conviction for the first felony. As previously stated, the record contains a certified copy of the first felony conviction which occurred in 1971, but there is no direct evidence of when the second felony offense was committed. However there is evidence in

the record that defendant was arrested for this offense on October 2, 1977, and that he was indicted on October 12, 1977.

The State argues that the date when the second felony offense was committed was proved by circumstantial evidence. The State relies on *People v. Kennard* (1990), 204 Ill. App. 3d 641, 561 N.E.2d 1188, *People v. Stewart* (1989), 186 Ill. App. 3d 833, 542 N.E.2d 915, and *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107, for its position that circumstantial evidence can be used to establish the dates when defendant's prior offenses were committed. However, the circumstantial evidence in the State's cases consisted of such documents as the presentence investigation report, dates of arrest and conviction for the prior offenses, as well as certified copies of the defendant's prior convictions. What the State considers as circumstantial evidence in this case is the statute of limitations for felonies, section 3—5(b) of the Criminal Code of 1961, which provides:

> "Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3—6, a prosecution for any offense not designated in Subsection (a) must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." (Ill. Rev. Stat. 1985, ch. 38, par. 3—5(b).)

The State claims that because the first felony conviction occurred in 1971, and his second conviction did not occur until 1977, the six-year period between the two prior felonies exceeded the three-year statute of limitations. The State, thus, reasons that if the felony for which defendant was indicted in 1977 had been committed before the first felony conviction in 1971, the statute of limitations would have precluded prosecution.

One of the flaws in the State's reasoning is that it does not allow for instances when the statute could be tolled. However, before we can determine whether the State has met its burden of proof under the Act, the proper standard of proof must be determined.

■ Defendant claims that the State must prove the prerequisites of the Act beyond a reasonable doubt. The Illinois Supreme Court reached a contrary conclusion regarding the Class X sentencing statute (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8)) in *People v. Williams* (1992), 149 Ill. 2d 467, 599 N.E.2d 913, but distinguished the Class X provision from the Act. Citing *People v. Stewart* (1961), 23 Ill. 2d 161, 177 N.E.2d 237, the *Williams* court noted that the circumstances of the Act are dissimilar to the cir-

cumstances surrounding the Class X provision. The *Williams* court further stated that the Act has been construed as requiring the reasonable doubt standard to prove a defendant's prior convictions, and when the legislature revised the Act it made no attempt to alter the higher standard of proof. The supreme court has not previously construed the Class X provision to mean that the State is required to prove a defendant's prior convictions beyond a reasonable doubt. (*Williams*, 149 Ill. 2d at 478-79.) The supreme court further distinguished the Class X provision from the Act based on the fact that the Act consists of evidentiary procedures which the State is required to follow when it seeks to have the court sentence a defendant as an habitual criminal. (See Ill. Rev. Stat. 1985, ch. 38, par. 33B—2; *Williams*, 149 Ill. 2d at 480.) We, thus, conclude that the State is required to prove defendant's prior felony convictions beyond a reasonable doubt when seeking the imposition of a life sentence under the Act.

■ However, any allegation that the State has not proved a defendant's prior convictions with sufficient competent evidence must be brought to the attention of the sentencing court, and a failure to do so results in a waiver of the issue on appeal. (*People v. Poole* (1988), 167 Ill. App. 3d 7, 18, 520 N.E.2d 1017; *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 859, 493 N.E.2d 600.) Because defendant in the case *sub judice* failed to raise the issue at the sentencing hearing that the State failed to meet its burden of proof regarding when the second felony was committed, this issue is waived.

Because of our conclusions on this issue, we need not address defendant's contention that he could not be resentenced on remand due to the attachment of double jeopardy.

Defendant next contends that the trial court erred in failing to hold an evidentiary hearing regarding whether defendant waived rights in contemplation of a plea agreement, and whether defendant was penalized for exercising his right to stand trial. This issue arises from the fact that defendant alluded to the State's offer of a plea agreement whereby defendant's sentence would be reduced to six or seven years in exchange for his cooperation.

■ While defendant acknowledges that he did not accept the alleged plea offer by the State, he argues that he "had, to some extent, cooperated with the prosecution in an effort to satisfy the proposed agreement." Because defendant made remarks regarding this cooperation at the time of allocution, he claims that due process questions were raised as to whether he waived any constitutional

rights in anticipation of the plea agreement and whether he was punished for exercising his right to stand trial. For this reason, defendant claims that the circuit court should have made further inquiry into the nature of the State's offer and the actions defendant took to satisfy his part of the agreement. However, defendant failed to submit a sworn affidavit to support his allegations, which is a requirement where facts asserted are outside the record. (*People v. Brandon* (1987), 157 Ill. App. 3d 835, 844-45, 510 N.E.2d 1005; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 562-63, 366 N.E.2d 914.) Therefore, defendant's allegations are insufficient and may be denied without a hearing. *Boyce*, 51 Ill. App. 3d at 563.

We also conclude that defendant's alleged "cooperation" with the State did not result in a waiver of any constitutional rights where any alleged offer by the State was never accepted by defendant and thus had no constitutional significance. (See *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543.) Also without merit is defendant's argument that because he received a life sentence under the Act, he was being penalized for asserting his right to stand trial. The court in *People v. Sanders* (1990), 198 Ill. App. 3d 178, 555 N.E.2d 812, noted that it was not improper or evidence of prosecutorial vindictiveness to offer a defendant a reduced sentence as an incentive to plead guilty as part of a plea agreement but to recommend a greater sentence when the State's offer was refused. (*Sanders*, 198 Ill. App. 3d at 187-88.) In this case, there was no evidence that defendant was penalized for exercising his right to stand trial where he failed to prove that a plea offer with a reduced sentence was ever made, and where the life sentence imposed was in compliance with the statutory guidelines.

■ Defendant's final contention is that the Act is unconstitutional because it violates due process of law, the prohibition against *ex post facto* laws, and the separation of powers doctrine. However, this court has previously addressed and rejected these constitutional challenges in *People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781. See also *Davis*, 205 Ill. App. 3d 873.

For the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.