NOTICE

Decision filed 02/23/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241271-U

NO. 5-24-1271

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 23-CF-123 |
| | ) | |
| DOUGLAS C. ROBERSON, | ) | Honorable |
| | ) | Christopher W. Matoush, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*: We affirm this matter finding no plain error where the trial court properly determined the defendant's current and prior driver's license revocations were based upon a conviction of driving under the influence when imposing a felony sentence.

¶ 2    The defendant, Douglas C. Roberson, was convicted of one count of driving with a revoked driver's license after a bench trial. The defendant was sentenced to a term of three years' incarceration in the Illinois Department of Corrections (IDOC), with a six-month term of mandatory supervised release (MSR). The defendant appeals his sentence, arguing that the evidence at the sentencing hearing did not show that the defendant's current and prior driver's

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

license revocations had been based on driving under the influence (DUI) convictions, and therefore, the trial court's imposition of a felony sentence was plain error. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     We recite only those facts relevant to the dispositive issue on appeal. The defendant was charged by information on April 10, 2023, with one count of driving while driver's license is suspended or revoked (DWLR), a Class 4 felony, in violation of section 6-303(d-3) of the Illinois Vehicle Code (Code) (625 ILCS 5/6-303(d-3) (West 2022)). The information specifically stated that the defendant's driver's license or driving privilege had been previously revoked pursuant to section 11-501 of the Code (625 ILCS 5/11-501 (West 2004)), this being "a fourth or subsequent violation of Section 6-303" of the Code, and referenced the defendant's previous Class 4 felony conviction of DWLR in Madison County case No. 2005-CF-1843. The information further indicated that the defendant was eligible for extended-term sentencing with a minimum of 180 days' incarceration.

¶ 5     On July 26, 2023, the defendant filed a motion to terminate his public defender and proceed *pro se*. The defendant also filed numerous other motions to dismiss throughout the pendency of this matter. The trial court granted the defendant's motion to proceed *pro se* but denied all of the remaining motions. The matter proceeded to a bench trial on September 3, 2024.

¶ 6     The State called Lieutenant Brian Reid of the Litchfield Police Department who testified that he was on duty at around 3:33 p.m. on March 29, 2023. While patrolling, Lieutenant Reid performed a license plate check of a maroon-colored vehicle as it drove past him southbound on Highway 66 in Litchfield, Illinois. The plate check indicated that the registration was suspended and Lieutenant Reid noted that the street was a route maintained by the State of Illinois. Lieutenant

2

Reid was able to stop the vehicle after a short period of time and made contact with the driver. Lieutenant Reid identified the defendant in court as the individual he pulled over. Lieutenant Reid stated that the defendant was in the driver's seat of the vehicle and that no one else was in the car. Lieutenant Reid asked the defendant for his driver's license, and he responded that he was driving "on some tickets." The defendant provided Lieutenant Reid with a copy of the citations, one of which indicated that the defendant had been driving while his license was revoked. Lieutenant Reid asked the defendant if his license was still revoked and he admitted that he was driving with a revoked license. Lieutenant Reid then ran a check of the defendant's license by computer with the Secretary of State, which confirmed that the defendant's license was still revoked by the State of Illinois. Lieutenant Reid issued a citation to the defendant, and the vehicle was towed from the scene.

¶ 7    Lieutenant Reid further testified that People's Exhibit No. 1 was a DVD with his body camera footage from the vehicle stop. A portion of the footage was published, showing the defendant sitting in the driver's side of the vehicle and acknowledging that he believed that his driver's license was revoked. On cross-examination, the defendant asked Lieutenant Reid if he remembered the defendant stating that he believed that he had the right to drive. Lieutenant Reid responded that he did remember the defendant making that statement.

¶ 8    The State then offered a copy of the defendant's driving record for admission into evidence as People's Exhibit No. 2. The defendant was asked if he objected to the exhibit, and he stated that he did not. The trial court noted that the exhibit was a self-certified authenticated Illinois State driver's abstract from the Secretary of State and admitted the exhibit into evidence. In the interest of brevity and for ease of reference, relevant portions of the abstract are set forth in detail in the analysis below. After the abstract was admitted, the State rested.

3

¶ 9    The defendant then testified on his own behalf. After repeatedly attempting to present argument regarding his right to travel, the defendant testified that he was traveling because he thought he "had the right to do that."

¶ 10    The trial court found that the State had proven beyond a reasonable doubt that the defendant was operating or in actual physical control of a motor vehicle while on a highway in the State of Illinois. The trial court also found that, based upon the defendant's own admission and People's Exhibit 2, the defendant's driving privileges had been revoked at the time of the incident. The trial court noted that the defendant's revocation had been in place since at least November 23, 1991. The defendant then interrupted the trial court stating that he believed his driver's license was actually revoked since 1986. The trial court set a sentencing hearing for November 12, 2024.

¶ 11    A presentence investigation report (PSI) was prepared for the sentencing hearing. The PSI outlined the defendant's criminal history, all of which occurred in the State of Illinois unless otherwise noted, as follows: (1) a 1991 conviction for DUI involving alcohol; (2) a 1991 conviction for DWLR based on suspension; (3) a 1993 conviction for DUI involving alcohol; (4) a 1993 conviction for DWLR based on revocation; (5) a 1994 conviction for DWLR, noted to be a subsequent conviction; (6) a 1994 conviction for DWLR, noted to be a subsequent conviction, and also noted to be pursuant to revocation for DUI; (7) a 1996 conviction for DWLR, noted to be a subsequent conviction; (8) a 1997 conviction for DWLR, noted to be a subsequent conviction; (9) a 1998 conviction for aggravated DUI, noted to be a third or subsequent conviction; (10) a 1999 conviction for DWLR, noted to be a subsequent conviction and resulting in 18 months' incarceration in IDOC; (11) a 1999 conviction for deceptive practices involving a bad check, noted to be either over $150 or a second conviction; (12) 2002 convictions for DUI, noted to have occurred while the defendant's driving privileges were suspended or revoked, and for DWLR,

4

noted to be a subsequent conviction; (13) a 2005 conviction for possession of drug paraphernalia from Montgomery County, Tennessee; (14) a 2005 conviction for battery causing bodily harm; (15) a 2005 conviction for DWLR, noted to be a subsequent conviction; (16) a 2006 conviction for DWLR, noted to be a subsequent conviction and noted to have involved statutory summary suspension of the defendant's driving privilege; and (17) a 2006 conviction for DWLR, noted to be a subsequent conviction and noted to have involved statutory summary suspension of the defendant's driving privilege. The defendant was also noted in the PSI to have charges pending in multiple counties.

¶ 12    At sentencing, the defendant was asked whether he disagreed with the criminal history listed within the PSI, to which he replied, "No. It's all true. Just blowed out of proportion." The trial court then heard the defendant's statement regarding a motion to dismiss he filed on November 7, 2024, arguing, *inter alia*, that he had an "automobile exception" to drive and addressing the constitutionality of certain sections of the Code. The trial court denied the motion, referencing its previous rulings on the various motions filed by the defendant. The trial court noted that although the charging information indicated that the defendant was extended-term eligible, the defendant was not, in fact, eligible. The State agreed with the trial court's assessment. The trial court noted that the PSI clearly indicated that the offense was the fourth or subsequent violation of DWLR, and therefore, the defendant was subject to a minimum of 180 days in jail.

¶ 13    The trial court heard the State's argument regarding the factors in aggravation, including the defendant's prior criminal history and the necessity to deter others, as well as the defendant, from operating a motor vehicle without a valid driver's license. The State requested a term of three years' incarceration. The defendant stated that he "didn't go out there looking for trouble" and "figured [he] had the right to do it." The defendant requested a term of probation and gave a brief

5

statement of allocution, stating, "I am not a bad guy. I mean, I don't—I don't think I deserve to go back to prison. I thought I was doing the right thing. I thought I could beat you. I should have known better, but I didn't. I am sorry."

¶ 14    The trial court considered the PSI; the evidence presented at the defendant's bench trial; the defendant's argument and statement of allocution; all statutory and non-statutory factors in mitigation and aggravation whether specifically mentioned or not; the history and character of the defendant; and the seriousness of the offense. The trial court specifically noted the defendant's history of prior delinquency and that he had been previously sentenced to IDOC five or six times. The trial court noted that the defendant had at least 11 prior DWLR convictions related to alcohol, as well as 4 prior DUI convictions, the last being in 2002. The trial court further noted that the defendant had a total of 12 prior felony convictions.

¶ 15    The trial court noted the necessity of deterrence and stated that the only factor in mitigation to consider was that the defendant did not cause any serious physical harm; however, the seriousness of the offense would counteract that mitigation. Further, the trial court stated that there was nothing in the record to indicate that the defendant would comply with the terms of a period of probation, that the offense was a result of circumstances unlikely to recur, or that it was unlikely that the defendant would commit another crime. The trial court then sentenced the defendant to a term of three years' incarceration in IDOC with a six-month period of MSR. The trial court admonished the defendant of his appeal rights. The defendant did not file a motion to reconsider the sentence or any other posttrial motion after sentencing. The defendant filed a timely appeal.

¶ 16                                    II. ANALYSIS

¶ 17    The defendant appeals, arguing that the evidence at sentencing did not establish whether the current and prior violations occurred while his driver's license was suspended or revoked for

6

DUI, and, therefore, the evidence did not show that the defendant was eligible for the enhanced Class 4 felony sentencing. Accordingly, the defendant requests this court to vacate the Class 4 felony sentence and remand for a new sentencing hearing.

¶ 18    The defendant acknowledges that he failed to raise this argument during the sentencing hearing, as well as failing to raise the issue in a postsentence motion. "[A]ny allegation that the State has not proved a defendant's prior convictions with sufficient competent evidence must be brought to the attention of the sentencing court, and a failure to do so results in a waiver of the issue on appeal." *People v. Walton*, 240 Ill. App. 3d 49, 59 (1992). Such failure operates as a forfeiture of the right to raise the issue as grounds for reversal on review. *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010).

¶ 19    The defendant, however, requests this court to review the issue under the doctrine of plain error which provides a narrow and limited exception to the forfeiture rule. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). To warrant plain error review of a sentencing error, a defendant must show that the error was clear and obvious and then demonstrate that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Whether there is plain error is a question of law, which we review *de novo. People v. Williams*, 2022 IL 126918, ¶ 48. Under either prong of the plain error doctrine, it is the defendant who bears the burden of persuasion. *Id.* The first step in plain error review is to determine whether any error occurred at all. *Id.*

¶ 20    The defendant argues that the State failed to produce evidence that the revocations of his driver's license at the time of the violations resulting in his DWLR convictions were pursuant to a DUI. The defendant was charged with DWLR pursuant to section 6-303(d-3) of the Code which states:

7

"Any person convicted of a fourth, fifth, sixth, seventh, eighth, or ninth violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 180 days, if:

(1) *the current violation occurred when the person's driver's license was suspended or revoked for a violation of Section 11-401 or 11-501 of this Code*, a similar out-of-state offense, a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code; *and*

(2) *the prior convictions under this Section occurred while the person's driver's license was suspended or revoked for a violation of Section 11-401 or 11-501 of this Code*, a similar out-of-state offense, a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code ***." (Emphases added.) 625 ILCS 5/6-303(d-3) (West 2022).

The prosecution must prove the defendant's eligibility for an enhanced sentence by a preponderance of the evidence. *People v. Robinson*, 167 Ill. 2d 53, 71 (1995). For any prosecution under section 6-303 of the Code, "a certified copy of the driving abstract of the defendant shall be admitted as proof of any prior conviction." 625 ILCS 5/6-303(f) (West 2022). Further, "[a] court properly may consider a [PSI] to determine a defendant's criminal record; such a report is a reliable source for the purpose of inquiring into a defendant's criminal history." (Internal quotation marks omitted.) *People v. Owens*, 2016 IL App (4th) 140090, ¶ 42.

¶ 21    The defendant argues that the only evidence in the record regarding revocation of his driver's license is the abstract from the Secretary of State, People's Exhibit No. 2; that the abstract

is a computer printout with abbreviations and codes; that no witness testified as to how to interpret the abstract; that the abstract does not state the basis for his current driver's license revocation; and, that the last entry in the abstract indicates that his license was revoked for not having a valid driver's license. He notes that a driver's license may be subject to multiple revocations and suspensions at once, and that no revocation or suspension negates, invalidates, or lessens the effect of any others; he then argues, however, that only the basis for his *most recent* revocation can establish the basis for his DWLR conviction in this case. He argues that the trial court imposed a felony sentence without proof of eligibility, and that this was an egregious error denying him a fair hearing. The defendant argues that a new sentencing hearing is required in order for the trial court to determine the bases for his current and prior revocations, and thus, whether he is eligible for a Class 4 felony sentence.

¶ 22    The State responds that, while the defendant complains that no expert witness testified regarding interpretation of the abstract, he does not state that the information in the abstract is incorrect. The State notes that the abstract is *prima facie* evidence of its contents, and there is no evidence that the trial court did not understand the abstract. The State then argues that the abstract indicates that the defendant's latest driver's license revocation was for DUI, and that there is no indication in the abstract that the driver's license was ever reinstated. Therefore, the State argues the defendant cannot satisfy a plain error analysis because he cannot establish that the trial court erred when it sentenced him to a Class 4 felony sentence according to his driving history.

¶ 23    In his reply brief, the defendant clarifies his argument, stating that he does not challenge the trial court's ability to consider the abstract, nor does he challenge the accuracy of the abstract; rather, he argues that the abstract does not contain the information necessary to determine which revocations and suspensions in the abstract were in effect during the relevant time periods, which

would be the dates of the violations resulting in his four or more DWLR convictions. He notes that his 2002 revocation was not the most recent revocation, and that the abstract does not indicate when his driver's license was last revoked, does not state which conviction formed the basis for his last revocation, and does not indicate that at the time of his relevant violations, the underlying revocation was for a reason set forth at section 6-303(d-3).

¶ 24    A driver's license may be subject to multiple revocations, multiple suspensions, or any combination of both simultaneously; no revocation or suspension serves to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension. 625 ILCS 5/6-303(a-10) (West 2022). The defendant acknowledges that multiple revocations of a driver's license can be imposed on a driver at the same time; however, the defendant goes on to argue that only the last or most recent revocation can form the basis for a DWLR conviction, ultimately contending that only the most recent DWLR in his driving abstract could form the basis for the DWLR conviction in this case.

¶ 25    The defendant relies on *People v. Brown*, 2023 IL App (3d) 210460, to argue that, where neither the PSI nor the driving abstract indicates the *most recent* basis for a defendant's license revocation, and where enhanced sentencing requires proof that the current and prior violations of DWLR occurred during a period where the driver's license was revoked for a qualifying reason, a reviewing court must remand for a new sentencing hearing to determine the basis for the *most recent* revocation. We disagree with this reading of *Brown*.

¶ 26    In *Brown*, the defendant argued that the State presented no evidence to demonstrate that his underlying revocation was due to a DUI conviction, or that his prior DWLR convictions occurred when his driver's license was suspended or revoked due to DUI. *Id.* ¶ 96. The only exhibits in the case regarding the defendant's driving history were (1) a one-sentence driving

abstract that stated only that revocation was in effect on the relevant date, and (2) a PSI listing 44 prior convictions for DWLR that did not state the bases for the revocations on which those convictions were based. *Id.* ¶ 100. The defendant in *Brown* argued that, according to the PSI, his only DUI conviction was in 2003, he was convicted of DWLR pursuant to revocation in 2003 and 2004, and then he was later convicted of DWLR pursuant to suspension in 2005 and 2007. *Id.* ¶ 102. He further argued that the PSI indicated that his driver's license had been reinstated between the 2004 and 2005 convictions, because if it had not been, then the 2005 and 2007 DWLR convictions would have been pursuant to revocation rather than suspension. *Id.* He argued that a revoked driver's license could not have been suspended, and therefore, the PSI was evidence that the driver's license had been reinstated, and that the 2005 and 2007 convictions could not be demonstrated by the PSI to be based on the 2003 DUI revocation. *Id.*

¶ 27    The *Brown* court reiterated that the State must prove a defendant's eligibility for an enhanced sentence by a preponderance of the evidence, noted that neither the PSI nor the abstract indicated the basis for the most recent driver's license revocation, and stated that the trial court had not found by a preponderance of the evidence that the last revocation was based on a DUI. *Id.* ¶ 100. The court remanded the case to allow the parties to supplement the record, and for the trial court to determine the defendant's DWLR conviction classification. *Id.* ¶ 103.

¶ 28    In this matter, the defendant argues that, pursuant to *Brown*, only the last revocation in time is relevant to determine the basis for a DWLR conviction. This argument misapprehends the holding in *Brown*, where the PSI contained evidence that the license may have been reinstated at some point, thereby rendering the most recent revocation relevant to the specific facts of that case. *Id.* ¶ 102. The defendant's suggested reading of *Brown* directly contradicts the portion of section 6-303(a-10) that states that no subsequent revocation lessens the effect of a prior revocation. 625

11

ILCS 5/6-303(a-10) (West 2022). One of the effects of revocation is to establish a basis for a DWLR violation under section 6-303; a holding that only the most recent revocation is relevant to determine the basis for a DWLR violation would lessen the effect of any other revocations also in force at the time of the violation, directly controverting section 6-303(a-10). *Id.* § 6-303. Nothing in *Brown* suggests that was the reviewing court's intent. We read *Brown* to hold that when there is ambiguity in the evidence as to which revocations were in effect at the time of a DWLR violation, the case must be remanded for determination of enhanced sentencing eligibility.

¶ 29    We find no such ambiguity in this case. Unlike in *Brown*, the abstract here did not simply state that revocation was in effect on the relevant date of the violation. The abstract in this case was a six-page document outlining the defendant's driving history, including the bases for his revocations, both corroborating the PSI and providing additional information. The defendant, pursuant to his theory that only the basis for the most recent revocation is relevant, asks this court to consider the last two entries in the abstract; the first indicating a conviction on July 16, 2007, noted to be for DWLR, and the second indicating an extension on July 25, 2007, noted to be an extension of revocation. The defendant contends that these entries do not indicate that the latest revocation was for DUI, but rather for not having a valid driver's license. We disagree.

¶ 30    In order to determine the basis for revocation of the defendant's driver's license, of which there could be more than one, relevant to the defendant's DWLR conviction in this case, the abstract must be considered in its entirety, and not just the small portion cited by the defendant. While our decision focuses on events reflected in the abstract that occurred on and subsequent to June 16, 2002, we note that the abstract indicates that prior to June 16, 2002, the defendant's driver's license was either suspended, revoked, or the revocation was extended, on at least 12 occasions since 1986; he was convicted of DUI on 2 separate occasions; and, he was convicted of

DWLR on at least 4 occasions, suggesting that there were likely multiple revocations and suspensions in effect at the time of the DWLR violation in this case. As resolution of this matter does not require analysis of the revocations and suspensions in place prior to June 16, 2002, we decline to undertake such an analysis.

¶ 31　Dispositive to the issue currently before this court, the abstract clearly indicates that the defendant was arrested on June 16, 2002, due to his involvement in an alcohol and/or drug related accident wherein he was the "DRIVER IN PI OR FATAL CRASH REFUSED OR FAILED TESTS REQ IN 11-501.6." Consequently, his driving privileges were automatically suspended for 12 months from August 2, 2002, through August 2, 2003. Further, it is easily discernable from the abstract that on August 29, 2002, the defendant was convicted in Montgomery County, Illinois, of "DUI WHILE REV/SUSP FOR DUI/RECK HOM/LEAVE SCENE" pursuant to the June 16, 2002, incident and, as a consequence, his driver's license was again revoked from September 13, 2002, through September 13, 2012, noted to be for his "OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE." Also on August 29, 2002, in the same case and relating to the June 16, 2002, incident, the defendant was convicted of "DRIVING WHILE LICENSE OR PERMIT REVOKED/SUSPENDED" and, as a result, the previous revocation of his driver's license was extended from September 4, 2002, through September 13, 2012, the eligible reinstatement date for the DUI revocation. At least as of September 13, 2002, then, until at least September 13, 2012, the abstract indicates that the defendant's driver's license was revoked for DUI.

¶ 32　After the defendant's driver's license was revoked on September 13, 2002, the abstract indicates that the defendant was convicted of DWLR on two separate occasions in 2006 and on one occasion in 2007. After each of these convictions, the abstract specifically states that the

13

defendant's revocation was *extended* until the September 13, 2012, date, again, the same eligible reinstatement date as the DUI revocation. The six entries relating to these three convictions and corresponding extensions are the last six entries in the abstract, and they are the only entries that appear after the entries relating to the June 16, 2002, incident.

¶ 33 At the time of the three subsequent DWLR violations, as well as each of the three corresponding revocation extensions in 2006 and 2007, the defendant's license was clearly revoked until September 13, 2012, for a DUI conviction. Once revoked, a defendant's driving privileges are not automatically restored without first making an application and meeting any additional requirements from the Secretary of State. *People v. Turner*, 64 Ill. 2d 183, 186 (1976). The abstract indicates that at no point did the defendant take the required steps to reinstate his driving privileges after his 10-year revocation period ran on September 13, 2012, and states that the defendant's "REVOCATION WAS IN EFFECT ON 03-29-2023."

¶ 34 In this case, the driving abstract unambiguously stated that the basis for the defendant's 2002 revocation was DUI, and no subsequent entries in the abstract create any ambiguity as to the status of that revocation; the subsequent entries are all noted to be extensions of already existing revocations. Because nothing about those extensions of revocation lessens the effect of the September 13, 2002, DUI revocation, and there is no evidence or claim that the defendant's driver's license was ever reinstated, there simply is no ambiguity here. It is undisputed that the revocation which began on September 13, 2002, was in effect on March 29, 2023. The defendant makes no argument that his license was reinstated at any point and makes no argument that the information contained in the abstract is incorrect; he only argues that the reason for his suspension cannot be discerned from the abstract. As set forth above, the basis for the revocations can be easily discerned from the abstract. We also note that the defendant did not object at trial to the

14

admission of the abstract, and at sentencing he stated that everything in the PSI was correct. He also stated at trial that he believed that his driver's license had been revoked since 1986, and throughout the case filed motions and argued in court that he was allowed to drive even without a driver's license, essentially pursuant to his general right to travel.

¶ 35 Given the totality of the abstract and PSI evidence, it was reasonable for the trial court to infer that the defendant's driver's license continued to be revoked for DUI at the time of the instant offense, and that it had been revoked for DUI at the time of the three prior offenses. See *Owens*, 2016 IL App (4th) 140090, ¶ 43 (where it was undisputed that a defendant's driver's license remained revoked at the time of the offense, it was reasonable for the trial court to infer that the driver's license continued to be revoked for DUI).

¶ 36 We do not find error where the trial court properly considered the abstract and PSI in sentencing the defendant to the enhanced Class 4 felony term of three years' incarceration. As such, we find that no plain error occurred, and the issue remains forfeited.

¶ 37                                              III. CONCLUSION

¶ 38 We find no plain error where the trial court properly sentenced the defendant to an enhanced Class 4 felony. For the foregoing reasons, the judgment of the trial court regarding the defendant's sentence is affirmed.

¶ 39 Affirmed.